## In re Road in Beaver and Ashland Townships.

Corbett & Rugh and M. H. Davis, for petitioners.

A. A. Geary, for exceptants.

HARVEY, J., April 8, 1930.—On May 27, 1929, viewers from the county board of viewers were, upon petition of inhabitants of the Townships of Beaver and Ashland, in Clarion County, Pennsylvania, appointed to view and lay out a proposed public road definitely set out "to begin at a point on the line of land of W. A. Knight in a public road leading from Knox to Kossuth, a distance of 160 rods from the intersection of the Kossuth road with the road known as the Ash road, and extending thence to a point on the line of land of Howard Whitling and Stanley Whitling in a public cross-road, a distance of 300 rods from the intersection of the said public cross-road with the road leading from

Knox to Emlenton." The total length of the said road desired is about one and one-quarter miles.

Due notices were served upon the Supervisors of Ashland and Beaver Townships of the proposed petition, and on May 27, 1929, R. L. Craig, C. E., D. M. Geist, Esq., and A. F. Hess, members of the county board of viewers, were appointed viewers under said petition. Notices setting forth their appointment and the purposes thereof were served upon the Commissioners of Clarion County and the Supervisors of Ashland and Beaver Townships, respectively, and "all owners of land" through which the proposed road passes or on which said proposed road abuts. Before the date set for the view of the premises (July 15, 1929), R. L. Craig, one of the viewers appointed, died, and C. A. Imel, C. E., a member of the county board of viewers, was appointed by the court in the stead of R. L. Craig, deceased. The view was proceeded with. On Aug. 26, 1929, being the first day of court succeeding their appointment, the viewers filed their report. The report was confirmed *nisi*. On Sept. 11, 1929, exceptions to proceedings and the report of viewers were filed on the part of Beaver Township, as follows, to wit:

1. No notice was given to the Supervisors of Beaver Township aforesaid, and no notice filed among the records of the court of the intended appointment of a viewer in place of R. L. Craig, deceased, as required by Act of March 29, 1905, P. L. 69.

2. The beginning terminus of the road laid out by the viewers is another and a different terminus from that mentioned in the petition for viewers, and also order to viewers attached to said report.

3. Nowhere is there contained in the petition for the appointment of viewers, or in the report of viewers, the distance of the beginning point of the road laid out by the viewers from the nearest intersecting public road, as required by law.

4. The viewers did not pass upon and did not find whether a public road was necessary between the beginning point and the ending point mentioned in the petition for a road.

5. Under the order of court the viewers had no authority to lay out a road with points of beginning and ending, or either of them, different from the points mentioned in the petition.

6. The report does not show that C. A. Imel was sworn as a viewer.

7. The entire proceedings are irregular, illegal and void.

After hearing arguments of counsel upon the exceptions, and due consideration, we conclude as follows upon said exceptions, in order, viz.:

1. The county board of viewers is a body of persons particularly and peculiarly qualified to exercise the functions of viewers in all matters coming within the scope of their powers, under rules and regulations of the Courts of Common Pleas of their respective counties. Each member of the board, before entering upon the duties of his office, shall take and subscribe to an oath or affirmation to perform faithfully all the duties imposed upon him by law. "In case of vacancies in a board of view appointed in any case, and before its final action, the court which appointed the board may fill such vacancies in the board by the appointment of other members of the board of viewers:" Act of June 23, 1911, § 5, P. L. 1123. The constitution of the board is a matter under the law and rules of court. The law provides for the appointment of viewers, and "in case of a vacancy before final action," that the vacancy may be filled by the court. As an abstract proposition, who the individual members of the board of view may be is no concern of the petitioners so long as they are duly appointed, qualified and perform the duties

and requirements of their appointment properly. We are not able to find where it is required that notice of the persons or of a change in the personnel of the board of viewers shall be given to the petitioners. We believe that proper notices of all meetings relative to the view were given to parties interested under the law.

Exception No. 1 is overruled and dismissed.

2. This is an important point. The Act of April 23, 1909, P. L. 142, section 1, provides: "Hereafter all petitions for the laying out or for the vacation of a public road in any county of the Commonwealth shall fix definitely the point of beginning and the point of ending, *mentioned in said petition, by giving the exact distance from an intersecting public road,* street or railroad *already opened.*" (Italics ours.) Many adjudged road cases of the nature of this one have hinged upon the very question presented here. Invariably, when the conditions appear as they do in the instant case, the cases have been dismissed. *Definiteness* of the termini is essential. "A report must be set aside which locates a road with a terminus different from that mentioned in the petition:" Opening New Road in Byberry, 6 Phila. 384. As a matter of fact, and as shown in the report of the viewers and draft attached hereto, the eastern terminus of the proposed *new road* is 222 rods from the point mentioned in the petition. True, it begins at the end of an old public road duly laid out in 1842 and of record in Clarion County, the eastern end of the old road being at or near the point set out in the petition herein. The law, however, is plain and positive: "All *petitions* shall *fix definitely* the *point of beginning* and the *point of ending.*" This report certainly does *not* comply with the law in that respect as to the "point of beginning." It was urged that, under the circumstances in this case, the old 1842 road being a part of the road proposed in the petition, the law is in effect complied with. Many arguments present themselves why a deviation from the strict letter of the law shall not be made. Exception No. 2 is sustained.

3. This exception is sustained for reasons contained in the discussion of No. 2 above.

4. This *exception* is sustained for the reason of variance of the "beginning" terminus in *the petition* from that *set out in the report of viewers,* and while the report sets out that "the said section of road [*beginning* at the western terminus of the road laid out in 1842, etc.] is necessary as a public road for the use and convenience of the traveling public," the fact is that the proceedings for the laying out the section in question are invalid by reason of the variance of the "beginning" terminus in the petition and report, and the finding of the viewers as to the necessity of the section of the road is of no effect.

Exception No. 4 is sustained.

5. This exception is sustained.

6. While the report of the viewers, signed, *inter alia,* by Charles A. Imel, does not set out unequivocally that Charles A. Imel made oath specially in this case, yet, upon his appointment, he was sworn "to perform faithfully all the duties imposed on him by law." I think we may assume that the report signed by him, in which it is stated "the viewers having first severally taken oath as viewers as required by law," intended and did cover the point to which exception is made.

Exception No. 6 is overruled and dismissed.

7. We sustain this exception as to exceptions Nos. 2, 3 and 4.

And now, to wit, April 8, 1930, the 2nd, 3rd, 4th and 5th exceptions filed are sustained, and the report of the viewers filed in this matter Aug. 26, 1929, is accordingly set aside and dismissed.